

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

LUIS CASTRO-ALMONTE,

    Petitioner,

v.

JEFFREY SEARLS, in his official
capacity as Officer-in-Charge of the
Buffalo Federal Detention Facility, TAE
JOHNSON, in his official capacity as
Acting Director of U.S. Immigration
and Customs Enforcement,
ALEJANDRO MAYORKAS, in his
official capacity as Secretary of the U.S.
Department of Homeland Security,
MERRICK GARLAND, in his official
capacity as Attorney General of the
United States,

    Respondents.[1]

———————————————————————

22-CV-861 (JLS)

## DECISION AND ORDER

Luis Castro-Almonte, a native and citizen of the Dominican Republic, has

been detained at the Buffalo Federal Detention Facility pending removal

———————————

[1] The Government argues, and this Court agrees, that the only proper Respondent in this case is Jeffrey Searls, Officer-in-Charge of the Buffalo Federal Detention Facility, because he is the only Respondent with immediate custody over Castro-Almonte. Dkt. 5-4, at 19–20; *Rodriguez v. Barr*, No. 6:18-CV-06757-MAT, 2019 WL 2192516, at *3 (W.D.N.Y. May 21, 2019) ("Searls is the only proper respondent in this [Section] 2241 proceeding as he is the person with direct control over Petitioner's detention.") (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)).

proceedings for approximately 11 months, and petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Castro-Almonte is currently detained under 8 U.S.C. § 1226(c).[2] Section 1226(c) requires detention of aliens convicted of certain crimes pending removal proceedings and does not afford a hearing at which the alien may advocate for release. Castro-Almonte argues that Section 1226(c), as applied to him, violates his Fifth Amendment procedural due process rights because it requires his continued detention, without a bond hearing, pending a final removal order.

Castro-Almonte seeks, among other relief, an order requiring his "release within 10 days unless [the Government] schedule[s] a hearing before an immigration judge. . . ." Specifically, Castro-Almonte asks that the Government be required to prove by clear and convincing evidence that his continued detention is necessary to protect the community or prevent him from fleeing—and show that no

---

[2] "8 U.S.C. § 1226 governs the detention of aliens *before* the removal period—broadly speaking, the detention of those aliens who 'are not immediately deportable.'" *Brathwaite v. Barr*, 475 F. Supp. 3d 179, 185 (W.D.N.Y. 2020) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018)). Conversely, "8 U.S.C. § 1231 governs the detention of aliens *during and after* the removal period—namely, those who are subject to final orders of removal." *Id.* Although the IJ denied Castro-Almonte's request for relief from removal on January 25, 2023, Castro-Almonte has until February 24, 2023 to appeal that decision to the BIA. *See* Dkt. 7-1. Thus, Castro-Almonte is not yet subject to a final order of removal and remains detained pursuant to Section 1226. *See Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2284–85 (holding that a removal order is "administratively final" under 8 U.S.C. § 1231(a)(1)(B)(i) "once the BIA has reviewed the order (or the time for seeking the BIA's review has expired) . . . unless a court issues a stay").

alternatives to detention are available.  Dkt. 1, at 3 ¶ 8, 19–20 ¶ 58, 21 ¶ 3.  If the Government cannot meet this burden, Castro-Almonte requests that the Immigration Judge ("IJ") be required to order his release on appropriate conditions of supervision, considering his ability to pay.  *Id.* at 3 ¶ 8.  For the reasons that follow, the Court denies the relief that Castro-Almonte requests and dismisses his petition.

## BACKGROUND

## I.      BACKGROUND AND DETENTION

Castro-Almonte, a native and citizen of the Dominican Republic, entered the United States as a Lawful Permanent Resident on or about May 31, 2014.  Dkt. 1, at 6 ¶ 21; Dkt. 5, at 2 ¶ 3; Dkt. 5-1, at 2 ¶ 5.

On September 18, 2018, Castro-Almonte was arrested in New Jersey for conspiracy, aggravated assault, possession of a weapon for unlawful purposes, and unlawful possession of a weapon.  Dkt. 5, at 2 ¶ 4; Dkt. 5-3, at 14.  According to the Incident Report, Castro-Almonte—after having an argument with the victim— returned to work with two other men and repeatedly punched, kicked, and struck the victim with a 30-inch-long piece of wood.  Dkt. 5-3, at 22–25.  When questioned by the police, Castro-Almonte admitted to "attacking the victim, striking him once, in the leg, with a length of wood, and twice, in the face/head, with his fist(s)."  *Id.* at 25.

On December 13, 2019, Castro-Almonte pled guilty to one count of 2nd Degree Aggravated Assault in violation of N.J.S.A. 2C:12-1(b)(1) in the Superior Court of New Jersey, Middlesex County. Dkt. 1, at 7 ¶ 22; Dkt. 5, at 2 ¶ 5; Dkt. 1-2, at 16. Castro-Almonte was then sentenced to three years of imprisonment on March 2, 2020. Dkt. 1, at 7 ¶ 22; Dkt. 5, at 2 ¶ 5; Dkt. 1-2, at 16.

On April 23, 2021, Castro-Almonte was placed in immigration removal proceedings via Notice to Appear ("NTA"). Dkt. 1-2, at 3–6. The NTA alleged that Castro-Almonte was a native and citizen of the Dominican Republic, and subject to removal pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i), as an alien who has been convicted of a crime involving moral turpitude committed within five years after the date of admission, for which a sentence of one year or longer may be imposed. *Id.* at 3.

Castro-Almonte received his initial master calendar hearing on June 4, 2021, where he admitted through counsel all allegations in the NTA and conceded the charge of removability. Dkt. 1-2, at 66; Dkt. 5, at 3 ¶ 7; Dkt. 5-1, at 3 ¶ 9.

On June 8, 2021, Castro-Almonte filed a petition in the Superior Court of New Jersey for Post-Conviction Release ("PCR petition"), alleging that his conviction resulted from ineffective assistance of counsel. Dkt. 1, at 7 ¶ 24; Dkt. 5-4, at 3; Dkt. 1-2, at 24. That petition was denied, and Castro-Almonte appealed to the Appellate Division of the New Jersey Superior Court. Dkt. 1, at 9 ¶ 28; Dkt. 5-4, at 3; Dkt. 1-2, at 26, 37, 41. According to Castro-Almonte, that appeal remains pending. Dkt. 1, at 9 ¶ 28; Dkt. 8-4, at 15.

4

On August 12, 2021, Castro-Almonte's then-counsel was granted a motion to withdraw, and Castro-Almonte thereafter obtained multiple continuances of the immigration proceedings. Dkt. 5-4, at 3; *see* Dkt. 8, at 7. On November 4, 2021, Castro-Almonte filed an I-589 Application for Asylum and Withholding of Removal. Dkt. 1, at 7 ¶ 25; Dkt. 1-2, at 50–62; Dkt. 5, at 3 ¶ 9. After an individual hearing was set for January 2022, Castro-Almonte sought—and the IJ granted—two continuances, and the hearing was rescheduled for March 8, 2022. Dkt. 1-2, at 67; Dkt. 5, at 3 ¶¶ 10, 11. The day before that hearing, on March 7, 2022, Castro-Almonte sought an administrative closure of his removal proceedings pending the resolution of his PCR petition. Dkt. 1, at 8 ¶ 26; Dkt. 1-2, at 33–35; Dkt. 5-4, at 3. That motion was granted on March 10, 2022. Dkt 1-2, at 35.

On March 11, 2022, Castro-Almonte was taken into DHS custody following his release from prison in New Jersey, and transferred to Moshannon Valley Processing Center in Philipsburg, Pennsylvania. Dkt. 1, at 8 ¶ 27; Dkt. 5-4, at 3. On April 22, 2022, DHS moved to re-calendar Castro-Almonte's case—and transfer venue to the Cleveland Immigration Court—which was granted on May 3, 2022. Dkt. 1, at 8 ¶ 27; Dkt. 5-4, at 3; Dkt. 1-2, at 67. An individual hearing was scheduled for May 16, 2022, but Castro-Almonte was granted a continuance. Dkt. 1-2, at 67. On May 25, 2022, Castro-Almonte filed his third motion for administrative closure of his case or, in the alternative, a continuance of the removal proceedings. *Id.*; Dkt 5-4, at 3. Castro-Almonte's motion for administrative closure was denied, but the IJ granted a continuance until after August 1, 2022.

5

Dkt. 1-2, at 70.  A master reset conference was scheduled for August 3, 2022, with a final merits hearing tentatively scheduled for August 26, 2022.  Dkt. 1, at 8 ¶ 27; Dkt. 1-2, at 69; Dkt 5-4, at 3.  That final hearing was rescheduled for November 10, 2022, and then moved again to November 28, 2022.  Dkt. 1, at  9 ¶ 29; Dkt. 1-2, at 72.

On September 13, 2022, Castro-Almonte was transferred to the Buffalo Federal Detention Facility in Batavia, New York.  Dkt. 1, at 9 ¶ 29; Dkt. 5-4, at 3. On September 15, 2022, DHS successfully moved to transfer venue to Batavia Immigration Court.  Dkt. 1, at 9 ¶ 29.  Castro-Almonte sought administrative closure of his case for a fourth time on October 4, 2022—which was again denied. Dkt. 1, at 9 ¶ 29; Dkt. 5-4, at 3.  On November 28, 2022, Castro-Almonte received his individual merits hearing to consider his claims to relief from removal.  Dkt. 5-1, at 3 ¶ 14; Dkt. 5-4, at 4.  That hearing was continued until January 25, 2023, for the parties to present closing arguments and the IJ to render a decision.  Dkt. 5-1, at 3 ¶ 14; Dkt. 7, at 2 ¶ 3; Dkt. 7-1, at 2–5.  The IJ denied Castro-Almonte's request for relief for removal.  Dkt. 7, at 2 ¶ 3; Dkt. 7-1, at 2–5.

DHS has detained Castro-Almonte since March 11, 2022, pending completion of his ongoing removal proceedings.  Dkt. 1, at 9 ¶ 30;  Dkt. 5, at 3 ¶ 13, 4 ¶ 20.

## II.      PROCEDURAL HISTORY

Castro-Almonte filed his petition for habeas corpus on November 9, 2022 (Dkt. 1).  The Government answered and filed a memorandum and declarations in opposition (Dkts. 5, 5-1, 5-4).  Castro-Almonte replied (Dkt. 8).

### ANALYSIS[3]

## I.   Constitutionality of Section 1226(c)

The Fifth Amendment "protects [aliens like Castro-Almonte] from deprivation of life, liberty, or property without due process of law." *See Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *see also Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").  Equally clear are the "constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth . . . Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

Castro-Almonte's detention is mandatory under 8 U.S.C. § 1226(c), which provides that the Attorney General "shall take into custody any alien who . . . is deportable by reason of having committed" certain criminal offenses—including, as relevant here, a crime of moral turpitude committed within five years of admission

---

[3] Jurisdiction over substantive challenges to final deportation, exclusion, and removal orders resides with the circuit courts; district courts lack jurisdiction over the merits of such orders. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) (holding that the REAL ID Act "eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . , which circuit courts alone can consider").  District courts can, however, review claims that pre-removal detention is unconstitutional. *See Demore v. Kim*, 538 U.S. 510, 516–17 (2003).  In this way, habeas corpus review is available to persons "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3).  Castro-Almonte claims that his now 11-month detention under Section 1226(c) without a bond hearing violates his Fifth Amendment procedural due process rights. Dkt. 1, at 14 ¶ 44.  The Government does not dispute that this Court has jurisdiction over Castro-Almonte's challenge to his continued detention. Dkt. 5, at 2 ¶ 1.

into the United States, for which the alien may be sentenced to a term of imprisonment of at least one year.  *See* 8 U.S.C. § 1226(c)(1)(C);[4] 8 U.S.C. § 1227(a)(2)(A)(i) ("Any alien who . . . is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and . . . is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.").

The Supreme Court rejected a constitutional challenge to Section 1226(c) in *United States v. Demore*, where it held that "Congress, justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers, may require that persons . . . be detained for the brief period necessary for their removal proceedings." 538 U.S. at 513.  In so holding, the Court reiterated the "fundamental premise of immigration law" that, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Id.* at 521 (quoting *Diaz*, 426 U.S. at 79–80) (internal quotations omitted).

---

[4] If an alien meets these criteria, the Attorney General may order release "only if": (1) release is necessary for certain witness-protection purposes; and (2) the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(2); *see also Jennings v. Rodriguez*, — U.S. — , 138 S. Ct. 830, 837–38 (2018) (explaining that "Section 1226(c) . . . carves out a statutory category of aliens who may *not* be released under § 1226(a)" and summarizing Section 1226(c)'s detention and release requirements). The Attorney General also must consider the severity of the criminal offense. *See* 8 U.S.C. § 1226(c)(2).

The Court's holding in *Demore* aligns with its prior recognition that "the responsibility for regulating the relationship between the United States and [its] alien visitors [is] committed to the political branches of the Federal Government." *Diaz*, 426 U.S. at 81. Indeed, "[o]ver no conceivable subject is the legislative power of Congress more complete." *Flores*, 507 U.S. at 305 (internal quotations and citations omitted). Because decisions regarding immigration "may implicate [the United States'] relations with foreign powers, and [because] a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently . . . more appropriate [for] either the Legislature or the Executive than [for] the Judiciary." *Diaz*, 426 U.S. at 81.

Against this backdrop, courts must give particular care to the constitutional interests, governance concerns, and individual rights involved on these weighty questions. Indeed, courts must employ "a narrow standard of review of decisions made by the Congress or the President" and must exercise "the greatest caution" in evaluating constitutional claims that implicate those decisions. *See Diaz*, 426 U.S. at 81–82. In this way, courts strive for the proper constitutional balance in Section 1226(c) cases. *See Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 234 (3d Cir. 2011) ("[C]ourts reviewing petitions for writ of habeas corpus must exercise their independent judgment as to what is reasonable."), *abrogated on other grounds*, *Jennings*, — U.S. —, 138 S. Ct. 830 (2018); *Garcia v. Whitaker*, No. 6:18-cv-06836-MAT, 2019 WL 3802536, at *8 (W.D.N.Y. Aug. 13, 2019) ("*Jennings* left open the

9

possibility that individual detentions without bond hearings might eventually violate due process.").

Detention during removal proceedings "is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531. There is no bright-line rule as to when a period of detention under Section 1226(c) may violate due process. *See Johnson v. Orsino*, 942 F. Supp. 2d 396, 409 (S.D.N.Y. 2013) (noting that "the Supreme Court did not set a bright-line outer limit for what constitutes a permissible period of detention" and that courts "must assess the duration of the detention in proper context"); *Johnson v. Phillips*, No. 10-CV-480A, 2010 WL 6512350, at *7 (W.D.N.Y. Dec. 20, 2010) ("The Supreme Court in *Demore* noted the average time for conducting a removal proceeding (including appeal), but it did not set the outer limit for how long an alien may be detained while awaiting determination of his or her removal proceeding." (citation omitted)). In *Demore*, the Court reiterated its "longstanding view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *See* 538 U.S. at 526; *see also id.* at 513 (alien's detention under Section 1226(c) "for the brief period necessary for their removal proceedings" was constitutional).

Detention pending a determination of removability has a "definite termination point." *Demore*, 538 U.S. at 529. Where a petitioner appeals the IJ's decision to the BIA, such detention ends with a BIA determination and, if applicable, a final order of removal. *See, e.g., id.* at 529. Other delays attributable to a petitioner may also permissibly extend the termination point. *See id.* at 530

(identifying delay in petitioner's request for a continuance of his removal hearing); *id.* at 531 n.14 (concluding, where petitioner argued that "the length of detention required to appeal may deter aliens from exercising their right to do so," that "the legal system . . . is replete with situations requiring the making of difficult judgments as to which course to follow, and, even in the criminal context, there is no constitutional prohibition against requiring parties to make such choices" (internal quotations and citations omitted)).

Because the Due Process Clause prohibits "arbitrary" deprivations of liberty, a detainee "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 532 (Kennedy, J., concurring). For instance, an "unreasonable delay by the [government] in pursuing and completing deportation proceedings" may suggest that detention is being used "not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Id.* at 532–33. That analysis depends on "the circumstances of [the] case." *Id.* at 533.

*Demore* also highlights the "process" that has been built into a mandatory detention under Section 1226(c)—for example, that Section 1226(c) applies to detainees whose convictions were generally "obtained following the full procedural protections [the] criminal justice system offers." *See* 538 U.S. at 513; *id.* at 525 n.9 (noting that "respondent became 'deportable' under § 1226(c) only following criminal convictions that were secured following full procedural protections"); *Velasco Lopez*

11

*v. Decker*, 978 F.3d 842, 850 n.7 (2d Cir. 2020) (finding a "sharp contrast" between procedural protections afforded to criminal defendants who are later detained under Section 1226(c) and those afforded to Section 1226(a) detainees); *see also Demore*, 538 U.S. at 531–32 (Kennedy, J., concurring) (describing process available pursuant to *Matter of Joseph*, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999)).

## II.   Guideposts Relevant to the Reasonableness of Section 1226(c) Detention

Since *Jennings*, the Second Circuit "has not addressed . . . the standard to be utilized by courts in addressing procedural due process claims for aliens detained pursuant to § 1226(c) in the immigrant habeas context." *Ranchinskiy v. Barr*, 422 F. Supp. 3d 789, 796–97 (W.D.N.Y. 2019). District courts in this Circuit, in determining whether the petitioner's "length of detention has become unreasonable or unjustified," have considered factors such as:

> (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the petitioner; and (7) whether the petitioner's detention is near conclusion.

*Id.* at 797. If this analysis reveals that the detention is not unreasonably prolonged, there is no procedural due process violation, and the analysis ends. *See Kabba v. Barr*, 403 F. Supp. 3d 180, 185 (W.D.N.Y. 2019). If, however, a court concludes that the alien's detention is unreasonably prolonged, its next step considers what process

petitioner is due—*i.e.*, whether the government has "provided the procedural safeguards required by the Due Process Clause." *Id.*[5]

Because a procedural due process analysis is fact- and case-specific, decisions addressing Section 1226(c) due process challenges in similar circumstances reveal certain helpful guideposts. *See Velez Funes v. Garland*, No. 20-CV-883 (JLS), 2021 WL 2515659, at *5–7 (W.D.N.Y. June 18, 2021); *Sosa Rodriguez v. Feeley*, 507 F. Supp. 3d 466, 476–79 (W.D.N.Y. 2020).

For example, procedural due process claims by petitioners detained for 6 to approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct. *Compare Demore*, 538 U.S. at 530–31 (detention for six months did not violate Fifth Amendment), *Dryden v. Green*, 321 F. Supp. 3d 496, 502 (D.N.J. 2018) (denying bond hearing where petitioner was detained for "just over a year" and "delay was not the result of any apparent inaction or unreasonable delay on the part of the Government"), and *Minaya-Rodriguez*, 459 F. Supp. 3d 488, 501 (W.D.N.Y. 2020), *decision vacated, appeal dismissed* (Apr. 20, 2021) (denying

---

[5] To determine the safeguards necessary to ensure that a petitioner receives "the opportunity to be heard at a meaningful time and in a meaningful manner," the Court considers: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of that interest through the procedures used, plus the likely value, if any, of other procedural safeguards; and (3) the government's interest, including the function at issue and the burden that any other procedural requirement would impose. *See Eldridge*, 424 U.S. at 333, 335 (internal quotations and citation omitted); *see also Kabba*, 403 F. Supp. 3d at 188 (citing *Eldridge* factors at "the second step of the two-part inquiry—the process constitutionally due to [petitioner]").

bond hearing where petitioner's nearly-13-month detention in DHS custody was

"within the range" of his sentence for his underlying criminal offense), *with*

*Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *2, *8, *10

(S.D.N.Y. July 25, 2018) (granting bond hearing where petitioner was detained "just

over nine months," petitioner "attempted to speed things along" but waited more

than a month for an initial appearance, and the IJ sua sponte adjourned a merits

hearing for two months), *and Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL

2357266, at *1, *11 (granting bond hearing where petitioner was detained for "over

eight months" and delay in removal proceedings was "largely attributable to

immigration officials' failure to process and send [petitioner]'s A-file to his counsel").

Generally, petitions based on 15 to 22 months' detention are denied where

some reasonableness factors favor the petitioner, some factors favor the

Government, and neither party bears greater responsibility for delay in removal

proceedings.  *See, e.g., Garcia*, 2019 WL 3802536, at *8–9 (denying bond hearing

where petitioner was detained for 17 months, there was "no evidence that the

proceedings [were] prolonged by dilatory tactics on the part of the Government,"

and "neither party [was] at fault for any delay, which appear[ed] largely due to the

burgeoning case docket of the Immigration Court in Batavia"); *Lway Mu v.*

*Whitaker*, No. 6:18-cv-06924-MAT, 2019 WL 2373883, at *4 (W.D.N.Y. June 4, 2019)

(denying bond hearing where petitioner was detained for 19 months, some delays

were "attributable to strategic decisions by [petitioner] and his attorney," other

delays did not result from petitioner's litigation strategy, and there was "no

14

evidence . . that the Government ha[d] unreasonably prolonged [petitioner]'s removal proceedings); *Velez Funes*, 2021 WL 2515659, at *1, *8 (denying bond hearing where petitioner was detained for "nearly 22 months" and "at least some of the delay [was] attributable to [petitioner]'s express requests to adjourn his immigration proceedings" and petitioner "made the decision to appeal his removal order"); *Sigal v. Searls*, No. 1:18-CV-00389 EAW, 2018 WL 5831326, at *6, *7 (W.D.N.Y. Nov. 7, 2018) (denying bond hearing where petitioner was detained "for more than 16 months," noting that "courts in this Circuit considering *habeas corpus* claims related to § 1226(c) have found that delays attributable to normal consideration of an alien's appeal of adverse decisions do not render unreasonable the consequent delay of his ability to gain release into his home country" (internal quotations and citations omitted)); *Thompson v. Lynch*, No. 16-CV-6608 (CJS), 2017 WL 344970, at *6 (W.D.N.Y. Jan. 24, 2017) (denying bond hearing where detention reached 21 months and "petitioner's removal ha[d] been delayed by his own actions in pursuit of relief in the federal courts," so "neither his detention . . . nor its duration" established a due process violation); *Orsino*, 942 F. Supp. 2d at 408–09 (denying bond hearing where petitioner was detained for 15 months and remained in custody solely because he "chose to appeal the IJ's removal order," as he was entitled to, and that "delay caused by his actions [did] not make continued detention unreasonable or unjustified" (internal quotations and citations omitted)); *Phillips*, 2010 WL 6512350, at *6–7 (recommending denying bond hearing where petitioner was detained for 17 months, the record did "not indicate any delay or foot dragging

by the Government," and the "only significant delay" was the roughly nine months petitioner's appeal was pending with the BIA), *recommendation adopted*, 2011 WL 1465448 (W.D.N.Y. Apr. 18, 2011); *Adler v. U.S. Dep't of Homeland Sec.*, No. 09 Civ. 4093(SAS), 2009 WL 3029328, at *1 (S.D.N.Y. Sept. 22, 2009) (denying bond hearing where petitioner was detained for over 15 months—"more than twice as long as the maximum duration contemplated by the *Demore* Court"—but there was "no evidence in the record that the government ha[d] dragged its feet"). *But see Ranchinskiy*, 422 F. Supp. 3d at 798–801 (granting bond hearing where detention reached 21 months, some delay was attributable each party, and "on balance and particularly in view of the length of the detention and the circumstances surrounding that detention, . . . continued detention without a bond hearing [was] constitutionally unjustified"); *Vallejo v. Decker*, No. 18-CV-5649 (JMF), 2018 WL 3738947, at *4 (S.D.N.Y. Aug. 7, 2018) (granting bond hearing where petitioner was detained for almost 17 months without a hearing, principally because the Government was responsible for delays in removal proceedings that had "no constitutionally acceptable reason").

When detention exceeds 24 months, the petitioner generally prevails if some reasonableness factors favor the petitioner and some favor the Government. *See, e.g., Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 470, 477 (3d Cir. 2015) (granting bond hearing where petitioner was detained for 34 months and "neither the Government nor [petitioner] caused any extraordinary delays" and the parties "act[ed] in good faith"), *abrogated in part and on other grounds*, *Jennings*,

16

138 S. Ct. 830; *Leslie v. Att'y Gen. of the U.S.*, 678 F.3d 265, 266, 270–71 (3d Cir. 2012) (granting bond hearing where petitioner was detained for almost 48 months and delay resulted from a combination of Government conduct and petitioner's successful efforts to contest removal), *abrogated in part and on other grounds*, *Jennings*, 138 S. Ct. 830; *Constant v. Barr*, 409 F. Supp. 3d 159, 163, 169 (W.D.N.Y. 2019) (granting bond hearing where petitioner was detained for 25 months and "the record [did] not show that Petitioner was engaging in bad faith delay tactics").

Petitioners detained for more than 24 months may not prevail if they employ a litigation strategy that can be viewed as dilatory or unusual compared to similarly situated detainees. *See, e.g., Dor v. Dist. Dir., I.N.S.*, 891 F.2d 997, 999, 1003 (2d Cir. 1989) (holding that no procedural due process violation existed where petitioner was detained for 60 months because "his sustained detention" resulted from "the simple fact that—at his urgent request and by [a] stay—[the court] allowed his application to be exhaustively adjudicated" by the government"); *Manley v. Delmonte*, No. 17-CV-953, 2018 WL 2155890, at *1–2 (W.D.N.Y. May 9, 2018) (denying petition where detention exceeded 24 months, petitioner asked the Second Circuit to defer consideration of his immigration appeal until a state appeal of his criminal conviction concluded, and most delays were at petitioner or his attorney's request); *Luna-Aponte v. Holder*, 743 F. Supp. 2d 189, 190, 199 (W.D.N.Y. 2010) (denying bond hearing where petitioner was detained for approximately 39 months and filed an untimely appeal to the Second Circuit); *Sosa Rodriguez*, 507 F. Supp.

17

3d at 479 (denying bond hearing where petitioner was detained for 27 months and his pending BIA appeal was the sole barrier to removal).

These guideposts, though not dispositive, inform the Court's analysis of Castro-Almonte's request for a bond hearing.

### III.  Castro-Almonte's Detention Comports with the Fifth Amendment

Castro-Almonte challenges his continued detention on procedural due process grounds, arguing that his now 11-month detention has become unreasonably prolonged, and that the Government must provide an individualized bond hearing.[6] Dkt. 1, at 3 ¶ 8.  The Supreme Court's holding and rationale in *Demore* provide the baseline for this Court's analysis.  And the multi-factor test applied by district courts within this Circuit provides an additional framework.  Based on this baseline and framework, the Court concludes that Castro-Almonte's detention has not been unreasonably prolonged in violation of his due process rights.

The critical issue is whether Castro-Almonte's detention pending determination of his removal proceedings is unconstitutional beyond the "limited period" contemplated in *Demore*.  538 U.S. at 526.  Castro-Almonte's petition asserted that his detention—of approximately 7 months at the time of filing—was unreasonably prolonged "on its face."  Dkt. 1, at 15 ¶ 46.  Additionally, Castro-

---

[6] Specifically, Castro-Almonte requests "a bond hearing at which the Government bears the burden of proof by clear and convincing evidence that [Castro-Almonte's] continued detention is necessary to protect the community or prevent him from fleeing, and must show that no alternatives to detention are available."  Dkt. 1, at 3 ¶ 8.

Almonte argues that there is no evidence that he has "engaged in bad faith delay tactics in his pursuit of his appeals." *Id.* at 16 ¶ 48.  Castro-Almonte asserts that he "requested and was granted continuances while he was in criminal custody after his private attorney withdrew from the case and thereafter to pursue post-conviction relief"—arguing that such continuances do not rise to the level of abuse of process because they were necessary to protect Castro-Almonte's fundamental rights.  Dkt. 8, at 6–8.  And in his latest filing, Castro-Almonte contends that he intends to utilize his right to appeal to the BIA—and, thus, "his detention is likely to continue for many more months, pending adjudication of his appeal before the BIA." *Id.* at 8.

In its opposition, the Government argues that the length of Castro-Almonte's detention—less than one year—is not unreasonable.  Dkt. 5-4, at 9.  The Government asserts that it has caused no significant delays in the proceedings, "with only minor delays arising from [Castro-Almonte's] transfer between facilities." *Id.* at 10.  Instead, the Government argues that Castro-Almonte himself repeatedly delayed his removal proceedings. *Id.* at 10–11.  The Government also asserts that Castro-Almonte faced a criminal sentence greater than the time he has been in immigration custody,[7] failed to offer any meritorious defenses to removal, and his removal proceedings are nearing a conclusion. *Id.* at 14–19.

Although Castro-Almonte's detention pending the determination of his removal proceedings is significant, the length of detention "is not to be considered in

---

[7] Castro-Almonte concedes that his time in immigration detention has been shorter than the sentence he received from his criminal conviction. *See* Dkt. 1, at 16 ¶ 49.

isolation." *See Garcia*, 2019 WL 3802536, at *10, *Velez Funes*, 2021 WL 2515659, at
*8; *Sosa Rodriguez*, 2020 WL 7346139, at *9; *see also Dryden*, 321 F. Supp. 3d at
502 (holding that it was "insufficient that Petitioner's detention ha[d] merely
become suspect by reaching this six month to a year threshold," and that petitioner
"must show that his ongoing detention is so unreasonable or arbitrary that it has
actually violated his rights under the Due Process Clause"). As stated elsewhere,
"the sheer length of the proceedings is not alone determinative of reasonableness."
*De La Rosa v. Barr*, No. 6:19-cv-06418-MAT, 2019 WL 5842906, at *5 (W.D.N.Y.
Nov. 7, 2019) (quotations and citations omitted).

This is not a case of indefinite or unreasonable detention. Here, Castro-
Almonte's Section 1226(c) detention "will come to an end, one way or another, upon
the disposition of his appeal" to the BIA.[8] *See, e.g., Sigal*, 2018 WL 5831326, at *6.
In any case, any harm that would result if Castro-Almonte's detention continued for
an unreasonable amount of time is mitigated by his ability to file a new petition if
the facts meaningfully change.

*Demore* allows the Court to examine the reason for any delay in Castro-
Almonte's removal. *See Demore*, 538 U.S. at 530–31 n.14–15; *see also Ranchinskiy*,
422 F. Supp. 3d at 797. In this case, much of the delay is attributable to Castro-
Almonte's express requests for continuances of his immigration proceedings and
administrative closure of his case pending resolution of his PCR petition. *See, e.g.,*

---

[8] Or, if the circuit court issues a stay, upon resolution of that appeal. *See
Hechavarria v. Sessions*, 891 F.3d 49, 51 (2d Cir. 2018), *as amended* (May 22, 2018).

Dkt. 5-4, at 10–11.  Castro-Almonte requested—and received—several continuances of his removal proceedings.  *See id.*  Castro-Almonte also obtained a temporary administrative closure of his removal proceedings—until the Government successfully moved for calendaring about six weeks later.  *Id.*  And Castro-Almonte has purportedly[9] decided to appeal his removal order to the BIA.  *Id.* at 6 ¶ 26.

Castro-Almonte contends that he "requested and was granted continuances while he was in criminal custody after his private attorney withdrew from the case and thereafter to pursue post-conviction relief," and that those continuances were necessary to protect his fundamental rights.  Dkt. 8, at 6.  To be sure, Castro-Almonte is permitted to request extensions from the IJ, just as he may avail himself of "process" by appealing to the BIA.  But he cannot expect any resulting delay to bolster his due process claim.  *See Velez Funes*, 2021 WL 2515659, at *8; *Sosa Rodriguez*, 507 F. Supp. 3d at 480; *Sigal*, 2018 WL 5831326, at *5 (recognizing that "whether a delay in removal is attributable to a petitioner's own litigation strategy is a key consideration in considering due process challenges").  If a petitioner could delay enough and thereby earn release, he could defeat the process.  *See Demore*, 538 U.S. at 531 n.14 (concluding "there is no constitutional prohibition against requiring parties" to "mak[e]. . . difficult judgments," such as whether to risk a lengthier detention by exercising their right to appeal); *id.* at 530–31 n.15 (considering the delay resulting from the alien's request for a continuance of his

---

[9] In his reply, Castro-Almonte asserts that he "intends to utilize his right to appeal [the denial of his application for protection under the Convention against Torture] to the Board of Immigration Appeals."  Dkt. 8, at 8.

removal hearing so he could obtain relevant documents); *Doherty v. Thornburgh*,

943 F.2d 204, 211 (2d Cir. 1991) (concluding that the alien's "litigation strategy

[was] perfectly permissible" but that he could "not rely on the extra time resulting

therefore to claim that his prolonged detention violates substantive due process");

*Manley*, 2018 WL 2155890, at *2 (denying bond hearing where petitioner was

"partly in control of the sequence of events that will end his detention and partly

responsible for the length of the proceedings that have extended it" because he or

his attorney "prolonged the finality of [his] removal order" by requesting extensions

and stays; "having that right does not mean it may be exercised without

consequence"); *Sosa Rodriguez*, 2020 WL 7346139, at *9 (concluding that

petitioner's "pending appeal to the BIA [did] not impermissibly extend his

detention").

Castro-Almonte's due process claim also fails under the narrow test proposed

in Justice Kennedy's *Demore* concurrence.  The circumstances of Castro-Almonte's

detention do not support an inference that his detention is arbitrary, unreasonable,

or unjustified.  *Demore*, 538 U.S. at 532.  There are no facts[10] suggesting that DHS

---

[10] Castro-Almonte contends that "[t]he circumstances of [his] detention are unusual"
because he was detained one day after his removal proceedings were
administratively closed.  *See* Dkt. 1, at 8 ¶ 27 n.1.  "Administrative closure is 'a
docket management tool that is used to temporarily pause removal proceedings.'"
*Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 326 (2021) (quoting *Matter of W-Y-U-*, 27
I&N Dec. 17, 18 (BIA 2017)).  "It does not terminate or dismiss the case, but rather
'remove[s] a case from an Immigration Judge's active calendar or from the Board's
docket.'"  *Id.* (quoting *Matter of Avetisyan*, 25 I&N Dec. 688, 692 (BIA 2012)).  And 8
U.S.C. § 1226(c)(1)(c) requires the Attorney General to take criminal aliens—like
Castro-Almonte—into custody "when the alien is released."  *See* 8 U.S.C. §
1226(c)(1).  Therefore, to the extent Castro-Almonte suggests that the

seeks to detain Castro-Almonte for "other reasons" beyond facilitating deportation or protecting against risk of flight or dangerousness.[11] *Id.* at 532–33.

Under these circumstances, this Court concludes—as have others on similar facts[12]—that Castro-Almonte's continued detention comports with his procedural due process rights.  Upon review of Castro-Almonte's Section 1226(c) detention and the circumstances surrounding it, the Court finds no evidence that his detention has become unjustified, unreasonable, or arbitrary—especially in light of the nature of his conviction, his chosen litigation strategy, and the absence of any apparent inaction or bad faith on the part of the Government.

---

circumstances of his initial detention support an inference that it is arbitrary, unreasonable, or unjustified, the Court disagrees.

[11] The Court's analysis of the nature of the underlying offense that resulted in Castro-Almonte's Section 1226(c) detention also supports this conclusion.  In his reply, Castro-Almonte maintains that "consideration of [the nature of his conviction and sentence imposed] would undermine the very purpose of a procedural due process claim in the context of unreasonably prolonged detention."  Dkt. 8, at 11.  But "whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable" and "the nature of the crimes committed by the petitioner" are both factors that district courts in this Circuit expressly consider when determining whether the petitioner's detention has become unreasonably prolonged. *See, e.g., Ranchinskiy*, 422 F. Supp. 3d at 797 (quoting *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018)).  This Court concludes that Castro-Almonte's conviction demonstrates a risk of dangerousness to the community—which bears on the reasonableness of his continued detention. *See id.*

[12] The Court has considered where Castro-Almonte's detention falls among the guideposts discussed above. *See* Analysis, Section II, *supra*.  That consideration supplements—but does not replace—the Court's analysis of *Demore* and the reasonableness factors applied by district courts in this Circuit.

## CONCLUSION

For these reasons, the relief requested in Castro-Almonte's petition for a writ of habeas corpus is denied.  His petition is dismissed, without prejudice to filing a new petition in the future based on new and different facts, consistent with the analysis above.  Because the Court has dismissed Castro-Almonte's petition, his request for costs and attorney's fees is denied.  The Clerk of Court is directed to close this case.

SO ORDERED.

Dated:      February 9, 2023
            Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

24